UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 00-6155-CIV-FERGUSON

GEORGE ROBINSON,

Plaintiff,

v.

HVIDE MARINE INCORPORATED,

Defendant.

_______________________________________/

**NOTICE OF FILING ANSWERS TO PLAINTIFF'S EXPERT INTERROGATORIES**

COMES NOW the Defendant, HVIDE MARINE INCORPORATED, by and through its undersigned counsel and hereby notifies the Court and all parties hereto that it has served its Answers to Plaintiff's Expert Interrogatories dated February 14, 2002.

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail **on this 15th day of March, 2002**, to Andrew L. Waks, Esq., Waks & Burnett, P.A., 7103 S.W. 102 Avenue, Miami, Florida 33173.

GEORGE, HARTZ, LUNDEEN, FULMER,
JOHNSTONE, KING & STEVENS
Attorneys for Defendant
4800 LeJeune Road
Coral Gables, Florida 33146
Tel. 305-662-4800
Fax 305-663-0140

By_______________________
DAVID R. CANNING
Florida Bar No. 217689

X:\WPDOCS\2001 Cases\21985\Pleadings\031502 ntc of filing ans to expert intrr.wpd

CASE NO. 00-6155- CIV-FERGUSON

**PLAINTIFF'S EXPERT INTERROGATORIES**
**TO DEFENDANT, HVIDE MARINE INCORPORATED**

1. Please state the name, profession, and professional address of each person who you, or your attorneys will, or may, call to testify as an expert witness at the trial of this matter, and as to each such person, state the following:

Douglas M. Torborg
Marine Consultant
4172 Douglas Road
Coconut Grove, FL 33133

H. Donald Lambe, M.D.
3540 Forest Hill Blvd.,
Suite 102
West Palm Beach, FL 33406

(a) His educational background giving the names of the educational institutions attended, the dates of attendance and degrees earned with dates thereof.

See attached Curriculum Vitaes

(b) His specialty within his profession, if any.

See attached Curriculum Vitaes

(c) His experience within his field giving the dates, names and addresses of employers, if any; dates, names and addresses of institutions associated with, if any; and any other experience indicating dates and place.

See attached Curriculum Vitaes

(d) Names of all professional associations or societies with which he is related or a member if, stating his status with each and inclusive dates of such status.

See attached Curriculum Vitaes

(e) The title, name of publication, name of publisher and date of publication, of any published articles, books, etc., authored by each such person.

See attached Curriculum Vitaes

(f) Whether he has ever been a witness in any other lawsuit and if so, for each such lawsuit, give the name of the suit, the kind of suit involved, the name of the Court, the approximate date of the testimony, and the name and address of the parties of attorneys for whom he gave evidence.

See attached Curriculum Vitaes

2. State, in detail, the subject matter on which each person named in answer to Interrogatory No.1, above, is expected to testify.

a) See attached expert witness summary of Torborg.
b) See attached IME report of Dr. Lambe.

3. State the opinions that each such person will testify to at trial.

Same as #2.

4. State, in detail, the facts upon which each opinion set forth in Answer to Interrogatory No.3, above, is based, and as to each fact that is in any way relied upon by such person in arriving at this opinion, state:

Same as #2.

(a) The name and address of the person supplying such facts; and

(b) The form in which such facts were supplied to him.

5. If any person named in Answer to Interrogatory No.1, above, has submitted a written report or opinion related to the subject matter of this case, state:

No, as to Torborg.
Yes as to Lambe. See attached IME report.

(a) The name of the person submitting such written report or opinion related to the subject matter of this case; and

(b) The date (or dates if more than one) of such written report or opinion; and

(c) The name and address of the person to whom such written report or opinion was submitted.

6. Please attach a copy of each such written report or opinion set forth in your Answer to Interrogatory No.5, above, to your Answers to these Interrogatories. This request is made under the provision of Florida Rules of Civil Procedure, Rule No. 1.280, and you are requested to attach a copy of such report to these Answers to Interrogatories, and supply a copy to the undersigned attorneys, by mail, at the time the Answers to Interrogatories are required to be filed, and served, under the applicable Rules of Civil Procedure.

a. N/A
b. Previously produced.

7. As to each expert consulted by you or your attorneys relative to the subject matter of this case, but whom you do not expect to call to testify at trial, state:

(a) His name, profession, and professional address; and

See objections filed.

(b) Subject matter about which he was consulted; and

(c) If he has submitted any written reports or opinions relative to this subject matter about which he was consulted, indicate the date (or dates) of such report, and the name and address of the person to whom submitted.

8. Set forth the full name and present address of each and every witness who has any knowledge concerning the allegations contained in the complaint.

See witness lists filed by both parties herein.

CASE NO. 00-6155- CIV-FERGUSON

x ______________________

STATE OF Florida :

COUNTY OF Miami-Dade

BEFORE ME, the undersigned authority, personally appeared ______________________, who, after first being duly sworn by me, deposes and says that he has answered the above Expert Interrogatories to the best of his knowledge and belief.

SWORN TO BEFORE ME, who is personally known to me or produced ______________________ as identification, this 15th day of March, 2002.

Elda Ibarra
My Commission CC873441
Expires September 22, 2003

______________________
NOTARY PUBLIC

Elda Ibarra
[Print, type or stamp commissioned name of notary]

My Commission Expires:

✓ Personally known
____ Produced identification

Type of identification produced ______________

**ROBINSON, GEORGE** **SS# 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**

**11/21/2000** **DOI 02/20/1999**

### *Independent Medical Examination*

**Chief Complaint:** Bilateral shoulder and low back pain.

**History:** This 56-year old black male reports that he was injured on February 20, 1999, while working on a ship. He reports at that time a grating slipped out from under his feet, and he fell backwards landing on his back on a steel plate. He also reports that he struck his left shoulder on some pipes on the way down, and landed on steel railings with his right and left shoulder. He does not recall whether he struck his head, but he does believe he lost consciousness for a few minutes. He reports that he was taken to an ER in Philadelphia about two days after this happened. He reports that he has subsequently been treated by a Dr. Palmeri who operated on his right shoulder. He reports at this time, as a result of this accident, he continues to be bothered by pain in both shoulders with lifting or raising his arms over 90°. He also complains of pain in both shoulders with external rotation. He also notes that since the accident he is bothered by relatively constant low back pain with radiation to the back of both thighs and knees. He reports this is aggravated by any bending or standing. He denies any other problems as a result of the accident. He does admit to some occasional numbness in his right hand since the accident, and reports that initially after the accident he had a lot of numbness in the right upper and lower extremities, but that resolved for the most part. He denies any prior history of problems, symptoms or injuries to either shoulder or to his low back. He denies any other history of significant injury or motor vehicle accident in his lifetime, until about four days ago when he was involved in a motor vehicle accident, when he was rearended. He reports that subsequent to that he has had some neck and upper back pain, and some aggravation of his lower back pain. He is currently taking Ibuprofen and muscle relaxants. He reports that he was taking the Ibuprofen before the recent car accident for his back pain, but it taking the muscle relaxants only since the car accident, and he did take both Ibuprofen and a muscle relaxant about 6 hours ago.

**Past Medical History:** Significant for hypertension and diabetes. Other medications include Glucophage, Glyburide, and Clonidine. He is not allergic to any medications. During exam, when examining his legs, he is noted to have surgical scars about both knees, and he does report he injured his right in 1968, when it caught in a ladder on a ship. He subsequently had surgery on that knee in 1973, for total reconstruction. He also injured his left knee when he slipped on the oily deck of a ship in 1982, and had surgery on that knee in 1983. The patient reports that Dr. Palmeri was planning on operating on his left shoulder, but apparently for financial reasons that surgery was canceled and his back therapy was stopped.

**Social History:** He doesn't smoke cigarettes or drink alcohol. He reports that at the time of this accident he was employed as a merchant seaman, but has not returned to work or to sea since this accident. He is not involved in any sports or exercise, nor was he involved in any sports or exercise prior to this accident.

**H. DONALD LAMBE M.D.** *ORTHOPEDIC SURGERY*
3540 FOREST HILL BLVD. STE. 102 WEST PALM BEACH FL 33406

**ROBINSON, GEORGE**  2  SS# 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

11/21/2000  DOI 02/20/1999

**Physical Examination:** The patient was instructed to notify me of any pain or discomfort during the exam. He is noted to have a well healed 7 cm. surgical incision over the superior and lateral aspect of the right shoulder. There is no drainage or sign of infection. He has full active range of motion of both shoulders with reported discomfort on all extremes. Impingement and painful arc tests are negative bilaterally. Supraspinatus isolation test is negative bilaterally. External rotator strength is 5/5 bilaterally. He is ambulatory with a normal gait. Heel/toe walking is intact. He has full active range of motion of the thoracolumbar spine in all directions with reported low back discomfort on all extremes. He also reports some low back discomfort on simulated twisting maneuver. He reports tenderness over multiple lower lumbar spinous processes, and multiple cervical spinous processes, and the occiput. There is superficial tenderness in the lumbar area as well. There is no palpable or visible paraspinal muscular spasm. Femoral stretch is negative bilaterally. Straight leg raising is negative on the right, and on the left he reports it produces ipsilateral low back and buttock pain. The same pain is produced with the knee bent. Motors are 5/5 throughout both lower extremities. DTR's are 0 bilaterally in the knees, 0 in the left ankle, and 0-trace in the right ankle. Plantars are downward. There is no ankle clonus. Flip test is negative bilaterally. Sensation to pin prick is reported as diminished in multiple areas of the right lower extremity in a nondermatomal fashion. He is noted to have large, well healed, bilateral surgical incisions about the right knee, and smaller arthroscopic portal incisions about the left knee. There is no effusion of either knee, and there is full range of motion of both knees. There is no instability of the left knee, but exam of the right knee reveals at least a 3+ anterior laxity to Lachman test. There is 1 cm. of atrophy of the right thigh, and 2 cm. of atrophy of the right calf as compared to the left.

**Diagnostic Imaging:**
    **X-Rays:** Review of his x-rays include multiple views of his lumbar spine done at Coastal Orthopedic & Sports Medicine in Fort Pierce, FL on 4/6/99, which reveal marked spondylitic changes at L4-5, and L5-S1, with complete loss of the disc space and large anterior and posterior spurs, and vacuum disc phenomenon at L4-5, and vacuum disc phenomenon and anterior spurs at L5-S1. There are no obvious fractures or destructive lesions. There is a mild wedging of multiple upper lumbar and lower thoracic vertebrae which appears chronic. Multiple views of the right shoulder, at the same time, reveal marked degenerative hypertrophic changes at the AC joint, and a large reactive osteophyte of the greater tuberosity, and marked narrowing of the subacromial space. There is also an inferior osteophyte off the humeral head. There are no obvious acute fractures. Standing views of his left knee done at the same facility on 2/17/98, reveal moderate to marked degenerative changes in all three compartments.

Flexion/extension lateral views of his lumbar spine obtained today reveal previously noted severe degenerative changes at L4-5 and L5-S1, but no evidence of segmental instability at any level. Flexion/extension lateral views of the cervical spine reveal no evidence of acute fracture or segmental instability at any level. There is some anterior hypertrophic and degenerative changes at C4-5 and C5-6.

---

H. DONALD LAMBE M.D.  *ORTHOPEDIC SURGERY*
3540 FOREST HILL BLVD. STE. 102  WEST PALM BEACH FL 33406

**ROBINSON, GEORGE**                 3                      **SS# 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**

11/21/2000                                                   DOI 02/20/1999

MRI: Scan of his lumbar spine done at Radiology Imaging Associates on 3/25/99, reveals desiccation of all the lumbar discs except for L2-3. There are marked degenerative changes at L4-5 with complete collapse of the disc space and endplate changes and anterior and posterior osteoarthritic bridging and disc protrusion. There is also moderate posterior disc space narrowing at L5-S1 with anterior and posterior osteoarthritic changes an disc bulging. On the axial sections there is noted to be diffuse posterior bulging of the disc at L5-S1 with facet hypertrophy creating some lateral recess and foraminal stenosis bilaterally at L4-5. A combination of posterior diffuse posterior disc protrusion and facet and ligamentous hypertrophy creates a relatively marked central lateral recess and foraminal stenosis bilaterally. At L3-4 there is diffuse posterior disc bulging with some mild degree of superimposed central disc protrusion. An MRI scan of his right shoulder done at the same facility at the same time appears to show a complete tear of the rotator cuff with muscle retraction and with cephalad migration of the humeral head, and inferior humeral osteophyte. There are also reactive changes in the area of the greater tuberosity. There does appear to be some posterior flattening of the humeral head.

**Records Review:** A notice of injury dated 2/20/99, indicates that the patient was tightening a bolt when the spanner wrench slipped and he fell backwards landing on metal grating on 2/20/99. At that time he reported pain in the left chest and shoulder, and pain in the lower back, and severe pain to the right leg.

The records of Industrial Health Center at Northeast Hospital in Philadelphia indicate the patient was seen there on 2/22/99, at which time he had fallen from a platform to the deck 3 feet down, and was complaining of right shoulder and arm pain, and left upper chest pain and lower back pain without radiation. On exam at that time he was noted to have full range of motion of the right shoulder, with slight tenderness, and full range of motion of the spine with slight tenderness in the lumbar area, and he was diagnosed as having a contusion of the right shoulder and arm, and a lumbar strain and contusion. X-rays of his lumbosacral spine at that time were interpreted as showing marked narrowing at L4-5, with extensive subchondral sclerosis and large anterior hypertrophic spurs, and a vacuum disc phenomenon. There were noted to be similar findings at L5-S1. X-rays of his right shoulder were noted to show a hypertrophic spur from the greater tuberosity, representing an early degenerative change. There was also noted to be degenerative change in the AC joint. X-rays of the right humerus were noted to show no evidence of abnormality.

The records of Fort Pierce Walk-In Clinic indicate he was first seen there by Dr. Catalino Viado on 3/3/99, at which time he reported injuring his right shoulder and lumbar spine in the fall, and he was diagnosed as having a contusion of the right shoulder, and a lumbosacral sprain. On followup of 3/17/99, it was noted he was still having a lot of pain in his shoulder and back, and was also experiencing some problems with posterior thigh and legs, and a diagnosis of possible herniated lumbar disc was added, and an MRI scan of his lumbar spine was ordered. On a later followup of 3/30/99, it was noted that MRI of his lumbar spine had shown stenosis at L3-4 and

---

**ROBINSON, GEORGE** 4 **SS# 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**

**11/21/2000** **DOI 02/20/1999**

L4-5, and MRI of the shoulder had shown a torn rotator cuff on the right, and at that time he was referred to Dr. Palmeri. Their subsequent records indicate that they continued to follow the patient for management of his diabetes. A later note of 9/21/99, indicates that the patient appears to be doing well with the surgery on his right shoulder, and had no specific complaints at that time. The last available note of 9/29/99, indicates the patient was going to see Dr. Palmeri for surgery of his other shoulder.

The records of Dr. Norman Palmeri indicate he first saw the patient on 4/6/99, at which time he noted the patient had injured his right shoulder and low back in a fall of 2/20/99, and was also complaining of numbness and paresthesias of the right hand and fingers. He did note the patient had a prior history of back problems in 1995, which reportedly resolved. On exam at that time he noted the abduction of the patient's right shoulder was limited with pain. He obtained x-rays of the patient's right shoulder which he noted to show degenerative changes at the AC joint, and narrowing of the acromiohumeral interval suggesting a full thickness rotator cuff tear. He also obtained x-rays of the lumbar spine which he noted to show marked degenerative changes at L4-5 and L5-S1, but no acute fractures. He diagnosed a rotator cuff tear of the right shoulder, and recommended surgical repair. He noted that with respect to the patient's low back pain he was having no neurologic symptoms, so he recommended no particular treatment at that time. On a followup of 7/6/99, he noted the patient was still having problems with his back and shoulder and he ordered EMG's of the lower extremities. On 7/14/99, he performed arthroscopy of the patient's right shoulder, at which time he reported found marked fibrosis and synovitis of the shoulder joint, as well as a partially eroded biceps tendon. He also noted the anterior labrum showed evidence of instability with fraying and degenerative changes, and a partial tear which he debrided and tightened with a laser. He also noted the anterior capsule was redundant, and he performed a thermal capsular shift with the laser. He also noted the patient had a massive rotator cuff tear on the undersurface of the supraspinatus, and he performed an open repair for that problem, and noted at that time that the patient had a Type III acromial hook, and a huge rotator cuff tear. He noted, however, the edges of the tear were very fibrotic and scarred and could not be easily mobilized, and "these have the appearance of having been torn for quite some time". However, he repaired the tear in the VY fashion and also reattached it to the humeral head with suture anchors. He also performed a subacromial decompression and resection of the distal clavicle due to severe impingement and osteoarthritic changes at the AC joint.

The records of Dr. Palmeri's physical therapy indicate the patient was first seen there on 7/29/99, for evaluation s/p rotator cuff repair. He was later evaluated there on 9/28/99, for the diagnosis of lumbar sprain subsequent to the fall of 2/20/99, at which time he was noted to be complaining of pain and numbness down the entire right lower extremity, as well as giving way of his legs. Their records indicate he was treated there through at least 10/19/99, with complaints of low back pain.

Diagnostic imaging has included an MRI scan of the lumbar spine done at Radiology Imaging Associates in Fort Pierce, FL on 3/25/99, which was noted to show straightening of the spine and a congenitally small canal. At L3-4 there was noted to be a moderately large central disc

**H. DONALD LAMBE M.D.** ***ORTHOPEDIC SURGERY***
3540 FOREST HILL BLVD. STE. 102 WEST PALM BEACH FL 33406
561-964-1200 FAX 561-964-1803

**ROBINSON, GEORGE**  5  **SS# 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**

11/21/2000  DOI 02/20/1999

herniation. At L4-5 there was noted to be severe disc space narrowing with disc desiccation and bony productive endplate changes, as well as moderately severe spinal stenosis due to bony productive changes including facet hypertrophy and broad-based subligamentous disc herniation which was also noted to be producing marked encroachment of the lateral recesses and neural foramina bilaterally. At L5-S1 there was noted to be disc desiccation and disc space narrowing posteriorly with a broad-based diffuse subligamentous disc bulging or herniation and mild spinal stenosis. There was also noted to be bilateral lateral recess encroachment and marked narrowing of the neural foraminal bilaterally at that level. An MRI scan of the right shoulder done at the same facility at the same time was noted to show severe hypertrophic degenerative changes of the AC joint with a high riding humeral head with complete loss of subacromial adipose signal compatible with anterior impingement syndrome, and showed changes compatible with chronic tear of the rotator cuff with retraction. There was also noted to be some linear signal through the anterior labrum suggestive of an anterior labral tear, and some flattening of the posterolateral aspect of the humeral head suggesting the possibility of a Hill-Sachs compression.

**Impression:** In summary, this patient has subjective complaints of bilateral shoulder pain, low back pain and disability which he relates to a fall of 2/20/99. His physical exam today reveals no objective sign of injury or impairment, and in fact reveals some nonorganic findings. His diagnostic imaging has included x-rays of his lumbar spine which reveal severe degenerative changes at L4-5 and L5-S1, but no sign of injury, and x-rays of his right shoulder, shortly after this accident, which reveal degenerative changes of the AC joint, greater tuberosity and the humeral head with cephalad migration of the humeral head all consistent with chronic and long standing tear of the rotator cuff, and rotator cuff arthropathy. An MRI scan of the shoulder has also revealed similar findings, and an MRI scan of the lumbar spine has revealed multi-level severe degenerative changes including diffuse posterior disc bulging at L5-S1, diffuse posterior disc bulging and protrusion with associated osteophytes at L4-5, and diffuse posterior disc bulging with a central disc protrusion at L3-4. Review of his medical records reveals that initially he had complaints only of right shoulder and low back pain subsequent to this accident. His records also reveal that he reported to Dr. Palmeri a history of prior back problems in 1995, which he denied during his interview today. His records also reveal he has undergone surgery on the right shoulder which revealed multiple abnormalities, reportedly including extensive fibrosis and synovitis, multi-directional instability, an anterior labral tear, a Type III acromion, and a large chronic rotator cuff tear.

It is my overall impression based on the MRI and x-ray findings of the shoulder, shortly this reported injury, that his rotator cuff tear of the right shoulder certainly pre-existed the reported injury of 2/20/99. It is also my impression that the findings on his lumbar MRI scan also, more likely that not, are related to his pre-existing severe lumbar degenerative disc disease than to the injury of 2/20/99.

In summary, I do not believe it is likely that this patient has sustained any permanent injury or needs any further treatment or physical restrictions as a result of the accident of 2/20/99.

**ROBINSON, GEORGE** 6 **SS# 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**

**11/21/2000** **DOI 02/20/1999**

HDL/kp

"I declare, under the penalties of perjury, that the information contained within this document was prepared and is the work product of the undersigned, and is true to the best of my knowledge and information."

H. Donald Lambe, M.D.
FL Lic. #ME0038418

**H. DONALD LAMBE M.D.** ***ORTHOPEDIC SURGERY***
3540 FOREST HILL BLVD. STE. 102 WEST PALM BEACH FL 33406
561-964-1200 FAX 561-964-1803

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 00-6155-CIV-FERGUSON
MAGISTRATE JUDGE LURANA SNOW

GEORGE ROBINSON,

Plaintiff,

v.

HVIDE MARINE INCORPORATED,

Defendant.

______________________________/

**SUMMARY OF LIABILITY EXPERT OPINION**

The Defendant, HVIDE MARINE INCORPORATED, by and through its undersigned counsel hereby files this summary of expert opinion, and states as follows:

1. Name and Address of Liability Expert:

Douglas M. Torborg
Marine Consultant
4172 Douglas Road
Coconut Grove, FL 33133

2. Education Background, Training and Experience:

See Curriculum Vitae attached hereto.

3. Documents Reviewed in Conjunction with Providing an Opinion:

a. All documents listed as reviewed by Plaintiff's expert.
b. All depositions taken herein.
c. Witness statement of John Coughlin.
d. Ship inspection conducted on February 13, 2002.
e. Photographs taken by both experts.
f. Any other documents to be obtained in future discovery will be reviewed as well as the deposition transcript of the Plaintiff's expert, Harry Klauber.

4. Summary of Opinions:

Mr. Torborg is expected to testify that the vessel, *M/V Seabulk America*, was seaworthy at the time of Mr. Robinson's accident and that the Defendant, Hvide Marine, did not

commit any active negligence which was a legal cause of the injuries alleged to have been suffered by Plaintiff. Rather, Mr. Torborg will testify that the accident was due to the sole fault and negligence of the Plaintiff who was an experienced seaman whose wrench slipped off the nut due to his own lack of attention to his own safety. There was nothing wrong with the ship's equipment, tools, training, crew or work methods that caused the accident. Specifically, Mr. Torborg will state that the upper grating used by Mr. Robinson to stand on did not move at the time of the accident, was not the cause of the accident as reported by the Plaintiff himself at the time of the accident, and was neither defective nor unseaworthy. Said grating was part of the ship's design, had been approved by the United States Coast Guard, classification societies and any and all surveyors who have seen the ship since its construction. Mr. Torborg is a licensed ship's captain and will testify as to the proper procedures, job assignments and work methods as well as that all tools, machinery used and methods used to do the job were safe and seaworthy and were not the cause of the Plaintiff's accident. Mr. Torborg will also review and critique the opinion of Harry Klauber as soon as his transcript is ready for review and analysis. As discovery is still ongoing, the Defendant reserves the right to amend this summary of opinion for any new information learned.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail on this 12th day of March, 2002, to Andrew L. Waks, Esq./Yadira R. Pedraza, Esq., Waks & Barnett, P.A., 7103 S.W. 102 Avenue, Suite A, Miami, Florida 33173.

GEORGE, HARTZ, LUNDEEN, FULMER,
JOHNSTONE, KING & STEVENS
Attorneys for Defendant
4800 LeJeune Road
Coral Gables, Florida 33146
Tel. 305-662-4800
Fax 305-663-0140

By [signature]
DAVID R. CANNING
Florida Bar No. 217689

X:\WPDOCS\2001 Cases\21985\Pleadings\030602sum of liabity exp opinion.wpd



# DOUGLAS M. TORBORG
## MARINE CONSULTANT

*4172 DOUGLAS ROAD, COCONUT GROVE, FL 33133* *305.661.0981*

## SUMMARY

Offering 36 years of extensive experience in the shipping industry including as Director of Fleet Operations for nine American flag tankers under a contract with Military Sealift Command. Director of operations of four Ro-Ro's for the Maritime Administration. Managed the logistics of time and voyage chartered ships carrying bulk ores, steel and paper products. Twenty years experience at sea including ten years as Master. Consultant on operating procedures, International Safety Management Code, general average, personal injury, collision, cargo loss and charter disputes. Accepted as an expert in marine operations, safety and navigation in United States Federal Court.

## EDUCATION AND CREDENTIALS

B.S., Marine Transportation, 1964, U.S. Merchant Marine Academy, Kings Point, New York
Coast Guard Unlimited Master's License Seventh Issue
Qualified System Auditor of ISO 10011, Certificate Number R114-167
Qualified System Auditor of ISO 9002, Registered with IRCA London
Lloyd's Register Course in International Safety Management Code Auditing
Qualified Maritime Auditor, Registered with IRCA London

## SHORE EXPERIENCE

### 1989-Present: MARINE CONSULTANT

Analyze operations procedures, performance and costs for owners and investors. Perform audits for ISO 9002 compliance. Conduct surveys of ships, tanks and coatings. Provide supervision during shipyard, sandblasting, painting, tank coating and repair periods. Provide review and expert witness testimony for principals, attorneys and government agencies on vessel damage, cargo loss, general average, charter compliance, collision, allisions, groundings and personal injury.

### 1985–1989: DIRECTOR, GOVERNMENT FLEET
MARINE TRANSPORT LINES, INC., SECAUCUS, N.J.

Operated nine product tankers with a shore staff of 16 and 189 seagoing personnel. Responsible for yearly operations budget of $25 million under a fixed price contract with Military Sealift Command. Directed operations of four Roll-on Roll-off vessels under a contract with the Maritime Administration. Responsibilities included financial controls, contract negotiations, operations, safety overhauls and maintenance.

1985: PORT CAPTAIN, SEALIFT FLEET
MARINE TRANSPORT LINES, SECAUCUS, N.J.

Responsible for all deck, hull and tank maintenance, safety and allowed time. Interview and review personnel for positions as Master and Chief Officer

1977 –1979: VICE PRESIDENT-OPERATIONS, SOUTHERN AFRICA
L. J. BUCK & COMPANY, MORRISTOWN, N.J.

During vacation from sea duty in Durban, South Africa. Responsible for the logistics of all voyage and time chartered vessels calling at Southern African ports (1.4 million tons cargo annually). Managed office, responsible for budgets, stevedores, terminal production, office hire and allowed time.

## SEA EXPERIENCE

1975-1984: MASTER USNS SEALIFT ANTARCTIC
MARINE TRANSPORT LINES, SECAUCUS, N. J.

Responsible for vessel contract compliance and operation in worldwide petroleum trade. Joined company in June 1975 for final stage of construction and delivery of the product tanker USNS Sealift Antarctic. Redesigned the underway replenishment stations for Sealift Tankers which was accepted by Military Sealift Command and installed on all Sealift Tankers. Received award from Military Sealift Command for outstanding performance as Master of the Mediterranean Shuttle Tanker 1982-1984.

1974: CHIEF OFFICER
HUDSON WATERWAYS, NEW YORK, N. Y.

Served on product tanker. Responsible for multi-product cargoes, overtime control, safety, maintenance, contract compliance and tank cleaning.

1973: MASTER, S.S. AFRICAN MOON
FARRELL LINES INC., NEW YORK, N.Y.

In command of liner freighter on the U. S. East coast to West Africa trade.

1964-1972: THIRD OFFICER TO CHIEF OFFICER
FARRELL LINES INC., NEW YORK, N. Y.

Served on break bulk and container vessels in liner trades to West, South and East Africa, Australia and New Zealand. Extensive experience with break bulk, reefer, bulk liquid, bulk ore, palletized and containerized cargoes.

1961-1964:    CADET, U. S. MERCHANT MARINE ACADEMY

Served as a Cadet aboard the following ships: SS United States, SS Exeter, SS Mormacscan, SS pioneer Moor and USNS Comet

## PERSONAL

United States Citizen, served U.S. Naval Reserve (1965-1984), honorably discharged.

TRANSP. U.S. COAST GUARD, CG 5206 (4-79)

FILE NO

SERIAL NUMBER 088510

ISSUE NO -10-

# UNITED STATES COAST GUARD

# MASTER

## LICENSE

This is to certify that **************** DOUGLAS M. TORBORG ********************** having been duly examined and found competent by the undersigned, is licensed to serve as Master of United States Steam or Motor Vessels of any Gross Tons upon Oceans

****************************************************************************

****************************************************************************

for the term of five years from this date.

Given under my hand this 4TH day of APRIL, XXXX 2001

HOUSTON, TEXAS
Port

C. J. BIDWELL
Officer in Charge of Marine Inspection
BY DIRECTION